# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

TRINA THOMAS,

    Plaintiff,

vs.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

No. 2:16-CV-00148-LRS

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,** *INTER ALIA*

**BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment (ECF No. 16) and the Defendant's Motion For Summary Judgment (ECF No. 20).

## JURISDICTION

Trina Thomas, Plaintiff, applied for Title XVI Supplemental Security Income benefits (SSI) on January 16, 2013. The application was denied initially and on reconsideration. Plaintiff timely requested a hearing which was held on April 7, 2014, before Administrative Law Judge (ALJ) James W. Sherry. Plaintiff testified at the hearing, as did Vocational Expert (VE) Trevor Duncan. On June 16, 2014, the ALJ issued a decision finding the Plaintiff not disabled. The Appeals Council denied a request for review of the ALJ's decision, making that decision the Commissioner's final decision subject to judicial review. The Commissioner's final decision is appealable to district court pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 1**

## STATEMENT OF FACTS

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of her most recent application for SSI benefits, Plaintiff was 29 years old, and at the time of the administrative hearing, she was 30 years old. She has a seventh grade education and past relevant work experience as a server/waitress.

## STANDARD OF REVIEW

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

///

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ erred in: 1) failing to fully and fairly develop the record; 2) rejecting Plaintiff's symptom testimony; and 3) rejecting the request to reopen Plaintiff's prior application for SSI benefits.

## DISCUSSION

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(I). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has a "severe" medical impairment, that being mild lumbar degenerative disk disease; 2) Plaintiff's impairment does not

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), with the following additional limitations: she can sit, stand, or walk for about six hours in an eight hour day; she can perform unlimited pushing or pulling within these lifting restrictions; she can occasionally climb ladders, ropes or scaffolds; she can occasionally stoop and crouch; and she can frequently kneel; and 4) Plaintiff's RFC allows her to perform her past relevant work as a server/waitress. Accordingly, the ALJ concluded the Plaintiff is not disabled.

**DUTY TO DEVELOP RECORD**

The ALJ has a basic duty to inform himself about facts relevant to his decision. *Heckler v. Campbell*, 461 U.S. 458, 471 n. 1, 103 S.Ct. 1952 (1983). The ALJ's duty to develop the record exists even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The duty is triggered by ambiguous or inadequate evidence in the record and a specific finding of ambiguity or inadequacy by the ALJ is not necessary. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

Plaintiff contends the ALJ erred in failing to order testing to ascertain whether she has a "severe" cognitive impairment, that being either an intellectual disability

///
///
///
///
///
///
///
///

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

and/or a learning disability.[1] Plaintiff did not allege a cognitive impairment in either of her applications for SSI benefits.[2] The current medical record contains no reference to a possible cognitive impairment. Instead, at the April 7, 2014 hearing, Plaintiff's counsel requested "IQ testing" based on the fact Plaintiff had not obtained her GED (General Educational Development) certificate and had attended special education classes. (AR at p. 45). Plaintiff testified the highest grade she achieved in school was the seventh grade and that she was working on obtaining her GED. She testified she has difficulty with reading, writing and math, and took special education

///
///
///
///
///
///
///

---

[1] "Intellectual disability," formerly known as mental retardation, is a condition that causes significantly impaired cognitive functioning from birth or early infancy. A "learning disability" is a neurologically-based disorder that occurs when an individual has difficulty interpreting or processing what he or she sees or hears. Such an individual has difficulties in specific areas of academic achievement. A learning disability can occur across a range of intellectual ability. http://www.differencebetween.com/difference-between-learning-disability-and-vs-intellectual-disability/

[2] In addition to the application she filed on January 16, 2013, alleging her disability began on December 22, 2001 (AR at pp. 170-73), she filed an application on June 14, 2011, alleging her disability began on January 1, 2005. (AR at pp. 164-69).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

classes in school on those subjects. (AR at pp. 48-51).[3] According to Plaintiff, she has been working for the past three years on obtaining her GED. She has not actually taken the test, but has been practicing for it. Plaintiff testified she does not have a driver's license, although she tried to get one and failed the written test. (AR at pp. 51-53). Plaintiff testified she does not have any friends and that she was picked on because she attended special education classes. (AR at p. 63). She testified that she had some trouble with her job as a server/waitress because she got confused regarding orders. (AR at p. 72).

In a letter dated April 22, 2014, two weeks after the hearing, Plaintiff's counsel asked the ALJ to again consider ordering a consultative examination to determine if Plaintiff suffers from "cognitive impairments and intellectual deficits." (AR at p. 223). Counsel included a written statement from Diana Toulou, Plaintiff's GED instructor "off and on throughout the past 4-5 years," which detailed her observations of Plaintiff's "learning difficulties" in reading, writing, and math. For example, Ms. Toulou indicated Plaintiff could read at a third grade level "with support and tutoring throughout the process." Ms. Toulou acknowledged she was not qualified to

///

---

[3] In January 2013, it appears the Plaintiff's attorney at the time answered questions on her behalf in conjunction with the filing of her application for SSI benefits. The "Disability Report" indicates there was "[n]o contact with the claimant" and refers to "ATTY I3368." (AR at p. 184). With regard to "Education and Training Information," the report indicates Plaintiff completed a GED in 2000 and she did not attend special education classes. (AR at p. 188). Obviously, this is contrary to what Plaintiff testified to at the hearing, but these answers were not supplied directly by the Plaintiff and it is unknown whether she supplied such information to her attorney at the time.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

diagnose Plaintiff with a learning disability, but could only share what she had seen while working with the Plaintiff in the classroom. (AR at p. 224).

In his decision, the ALJ indicated he had reviewed and considered the statement of Ms. Toulou and found it was insufficient to establish Plaintiff had a medically determinable "learning disorder" as such a diagnosis was not documented by acceptable clinical or laboratory findings. (AR at p. 24). Plaintiff does not dispute that Ms. Toulou's statement does not constitute acceptable clinical or laboratory findings, but notes that the very purpose of the requested cognitive testing was to determine if such a diagnosis could be documented.[4]

This court concludes that the statement of Ms. Toulou, in addition to Plaintiff's testimony about her learning difficulties, was sufficient to trigger a duty on the part of the ALJ to develop the record to ascertain whether Plaintiff suffers from a "severe" medically determinable learning disability and beyond that, whether she may even

---

[4] A "severe" impairment is one which significantly limits physical or mental ability to do basic work-related activities. 20 C.F.R. § 416.920(c). It must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. It must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not just the claimant's statement of symptoms. 20 C.F.R. § 416.908. "Basic work activities" are the abilities and aptitudes to do most jobs, including: 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers and usual work situations; and 6) dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 8**

suffer from an intellectual disability meeting or equivalent to Section 12.05 ("Intellectual Disability") of the Listing of Impairments. 20 C.F.R. § 404 Subpart P, App. 1.[5] The record was inadequate to allow for proper evaluation of the evidence. (Ms. Toulou's statement; Plaintiff's testimony) and allow the ALJ to conclude Plaintiff does not have a severe "learning disorder." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). The record taken as a whole was inadequate to answer that question.

On remand, the ALJ will order a consultative psychological examination which will include IQ testing to determine whether Plaintiff has a "severe" intellectual disability that may meet or equal Listing 12.05, and testing to determine whether Plaintiff suffers from a "severe" learning disability which significantly limits her ability to perform basic work-related activities including understanding, carrying out, and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a

///
///
///
///
///

---

[5] In *Reed v. Berryhill*, 2017 WL 684154 at *4 (W.D. Wash.), the court found that evidence the plaintiff attended special education classes, did not graduate from high school, and had been unable to obtain a GED, potentially constituted evidence plaintiff had "deficits in adaptive functioning initially manifested during the developmental period," as set forth in the introductory paragraph of Listing 12.05. The "developmental period" is the period before age 22.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

routine work setting.[6] If the ALJ finds there is a "severe" intellectual disability that does not meet or equal Listing 12.05, and/or finds there is a "severe" learning disability, he or she shall make a new RFC finding and conduct a new analysis at step four and, if necessary, at step five of the sequential evaluation process.[7]

**REOPENING**

At the April 7, 2014 hearing, the ALJ himself suggested Plaintiff's prior application, dated June 14, 2011, could be reopened. (AR at p. 43). Plaintiff's counsel formally requested such reopening and the ALJ remarked he would "focus[] on June 14, 2011 for disability purposes," advising Plaintiff the reason was that "benefits can only begin from the date of an application that is subject to my

---

[6] Although the ALJ did not find the presence of a "severe" learning disability and included no mental limitations in his RFC, it is true that he presented the VE with a hypothetical that included certain mental health restrictions in the work place. The VE opined that the addition of those restrictions would not alter his conclusion that Plaintiff was capable of performing her past relevant work or other work in the national economy, regardless of whether her physical RFC was limited to "light" work or "sedentary" work. (AR at pp. 73-76). Nevertheless, without further development of the record, the true extent of the "severity" of any learning disability and/or intellectual disability is unknown.

[7] Plaintiff's contention that the ALJ improperly rejected her physical symptoms testimony is preserved for further appeal, if necessary. The court, at this time, makes no determination regarding Plaintiff's credibility and that is an issue which the ALJ, on remand, may further address in light of new evidence presented regarding Plaintiff's mental limitations.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

reopening, which is your prior application of 2011, so that's why we look at that date forward, even though some of your issues may exist prior to that date." (AR at p. 44). Although seemingly having reopened Plaintiff's prior application, in his subsequent written decision, the ALJ denied the Plaintiff's request to reopen "as discussed more fully below" (AR at p. 21) and found Plaintiff had not been under a disability since January 16, 2013, the date the second application was filed. (AR at p. 28). As Plaintiff notes, however, there was in fact no discussion by the ALJ why he denied reopening of the prior application.

In her summary judgment motion, the Commissioner appears to concede that the ALJ considered "on the merits" the issue of Plaintiff's disability during the already-adjudicated period (June 14, 2011 to January 16, 2013), and therefore, he *de facto* reopened Plaintiff's prior application. (ECF No. 20 at pp. 13-14). The Commissioner asserts, however, that reopening is of no practical consequence because Plaintiff alleged the same basis of disability pursuant to both applications (back pain), the ALJ considered an earlier onset date in her second application (December 22, 2001) than in her first application (January 1, 2005), the same evidence considered pursuant to the first application was considered pursuant to the second application, and the ALJ did not apply a presumption of continuing non-disability based upon the prior determination denying the first application.

Because of this court's finding that the ALJ had a duty to develop the record, the ALJ's *de facto* reopening has consequences in that on remand, the ALJ will have to consider mental and/or physical disability from the date of Plaintiff's initial application (June 14, 2011), instead of her second application (January 16, 2013). Evidence of intellectual and/or learning disability is relevant to the period from June 14, 2011 onward.

///

///

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

**CONCLUSION**

Plaintiff's Motion For Summary Judgment (ECF No. 16) is **GRANTED** and Defendant's Motion For Summary Judgment (ECF No. 20) is **DENIED**. The Commissioner's decision is **REVERSED** and pursuant to sentence four of 42 U.S.C. §405(g), this matter is **REMANDED** to the Commissioner for additional proceedings and findings consistent with this order. An application for attorney fees may be filed by separate motion.

**IT IS SO ORDERED.** The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this 30th day of August, 2017.

*s/Lonny R. Suko*

LONNY R. SUKO
Senior United States District Judge